And we will start our business. The first case we're going to hear this morning is Leach v. Biscoe, appellate number 22-1431. Well, but with permission, speaking of maiden voyages, we'd love to give her the opportunity to argue on behalf of Mr. Leach today. And we welcome her to the well of the court. Thank you. And congratulations on your graduation. Thank you. It's worth it. Thank you, Your Honors, and may it please the court. My name is Simone Hunter-Hopson, and I have the honor of representing Mr. Leach, the appellate in this present case. May I reserve two minutes for rebuttal time? You may. In the face of undisputed evidence showing Defendant Dyer's retaliatory animus towards Mr. Leach, the district court chose to dismiss this case based on the exhaustion issue that neither party raised or presented arguments on. Mr. Leach asked that this court reverse the district court's sua sponte order, finding that Mr. Leach failed to exhaust available administrative remedies for two reasons. First, he was not provided an opportunity to present arguments on this matter. And second, this was indeed a harmful error because if given the opportunity, Mr. Leach could have shown that there were no available administrative remedies for him to exhaust for his retaliatory misconduct charge. And if we were to assume that 801 and 804 did not provide the avenues for exhaustion and we move to considering whether or not retaliation had been shown, the only thing that I saw in the record about the consequence of the no action finding on the misconduct was a report, a recitation, that report, a notation of the no action would be in something called work and block reports. I didn't see anything in the record describing what they are or what the consequences of that notation is. And without that information, has he failed to demonstrate there's an issue concerning whether he sustained an adverse action? Well, Your Honors, yes. In the record, it does nominally say that it will stay on his work report. And I would like to point out that the charge itself was he refused to report to work. So, again, having that charge on his record itself could have some negative impact on his life in prison. But, again, the district court, as a matter of law, did not rule that Mr. Leach failed to show some harmful effect. In fact, Mr. Leach did not have an opportunity to go through trial, present evidence about how this would be a harmful effect. We didn't even, Mr. Leach, excuse me, did not even get to that question. But this was a motion for summary judgment, correct? Yes. And in the motion for summary judgment, there was discussion about the merits of his underlying retaliation claim, correct? Yes. As a result, shouldn't there be something in the record from which we could determine the consequence of the no-action report? Because we don't – there's nothing in the record that would tell us that. Am I right about that? Your Honor, yes. Again, facially on the record, there is – well, again, besides from the policy saying that it's on his work report. But, again, because the district court did not give Mr. Leach a full opportunity in the trial to show the harmful effects, whether that's going up on the stand himself and testifying about that or bringing other witnesses to the stand to testify about the realities of what that looks like in prison, he was denied that opportunity that we believe he should have been granted. But doesn't Mr. Leach have to show retaliation before he has any hope of succeeding? And how can he really show retaliation? Judge Roth, we believe so. In fact, the district court did say that there was evidence showing the retaliation, particularly Defendant Dyer's statement when she issued the misconduct charge against Mr. Leach. She told him, since you like to file grievances because Mr. Leach had been filing some grievances beforehand, you will have to take up this misconduct report with the hearing officer. So that retaliatory statement within itself is direct evidence sufficient to show the retaliation, and the district court did recognize that as well. But that talks about the motivation for the statement, but we have to focus on whether there was an adverse action that followed. Correct. Yes. And the case law does say that an adverse action is one that is sufficient to deter an ordinary person of ordinary firmness, excuse me, to no longer exercise his constitutional right. And so we believe that Mr. Leach could have shown, if given the opportunity to pursue trial, or it actually should be litigated in the district court if it's reversed for a man, that this would deter him of ordinary firmness to no longer file grievances given the retaliatory statement. Isn't there a challenge, though, in this record? Because after the no-action finding in November of 2019, he files another grievance in March of 2020 complaining about the reassignment from dietary to maintenance. So could a reasonable jury find that he was deterred in some way by the no-action misconduct finding that was on the reports? Well, Judge Schwartz, today we're arguing the retaliatory misconduct charge. The removal from his work assignment is something that's separate. I totally agree with you, it's totally separate. I'm talking about chronological sequence. Yes. The retaliation there is the misconduct charge itself. Having a charge itself saying that you failed to report when, in fact, the record shows, or Mr. Leach alleges that he had a conversation with multiple defendants, supervisors at the dietary work assignment, and he expressed to them his fear of possibly not being able to work again or some sort, because he filed a grievance in relation to his failure to pray. So, again, with all of the evidence there, whether direct or circumstantial, we believe that there's enough evidence at least for Mr. Leach to pursue a trial at the district court level with the adverse action and retaliation. Let me ask you a question about the record. At JA240, paragraph 8, the chief hearing officer's declaration states that an inmate's acceptance of responsibility for a misconduct charge resolved through an informal resolution process is implicit in his acceptance of the sanctions. The declaration also states that if the inmate wishes to contest the charges or to enter a plea of not guilty, the matter must be referred to formal resolution. Do these statements mean that all resolutions of misconduct charges through the informal process imply a degree of guilt, and could that be some evidence in the record of the potential adverse action here? Yes, Your Honor. And, in fact, 801 also says that you cannot appeal an informal resolution unless the inmate believes that the sanction is disproportionate to the offense. Right? It's not saying you can appeal if you believe that you're not guilty, which Mr. Leach believes is the case here. But, again, that itself, the policy that you just read, is indicative or indicia of accepting some form of guilt. And then the limited and narrow circumstances in which an inmate can actually appeal the informal resolution process as well, it also limits Mr. Leach's opportunity to show the retaliation. Does the record tell us whether or not a not guilty resolution, recognizing that's not in the 804 process, not 801 process, but does that remain on any reports, any work and block report or anything else? Do we know that? It does not indicate. It just vaguely says that the informal resolution, I have it particularly the language here, the informal resolution remains on the applicable block and work report. So it does not say if the informal resolution, what action was taken, what the outcome was. It does not specify how that does show up on the record, on the report. Well, I'm referring to the formal process, a not guilty resolution in the formal process. Do we know if that remains on a report anywhere? The formal, if you go through a formal hearing and appeal, you can get that removed, which is the difference between the informal resolution process, which is a bit more limited from Mr. Leach, versus a formal hearing, which would actually get some form of expungement. Can you tell me where in the record it says that if an inmate goes through the formal process, it can, as a remedy, can have the notation on the block and work reports removed? Do you have a citation for that, or did I misunderstand? For the formal hearing? I do not have that on me right now. I could get that for you, Your Honor. But it is in the policy that when you go through a formal hearing process, it's just a wide variety of more options in terms of what remedy will be available compared to the informal resolution. But, on rebuttal, I can't get that for you. Thank you. And so, Your Honor, if I could just go back and also discuss, again, why this was a harmful error. The 804 policy governs the prison's official grievance system, and it specifically states that, quote, issues concerning a specific inmate misconduct charge must be addressed through the prison's 801 policy. And the 801 policy governs the disciplinary system there. So, therefore, because Mr. Leach's grievance involved defendants retaliating against him and falsifying a misconduct charge, 804 instructs prisoners that they now have to go through 801. And as I have briefly mentioned, 801 specifically instructs prisoners that they can only appeal the outcome when the prisoner believes that the sanction imposed is disproportionate to the offense. Again, that forecloses Mr. Leach from any avenue in terms of seeking some form of redress for the retaliation and retaliatory misconduct charge. So is it your position that if we were to send this back to the district court for failing to give notice, would the district court have to then examine whether exhaustion would have been futile, i.e., because from what you've just represented, 801 and 804 did not provide avenues for his unique situation of no action, no penalty, therefore no 801 appeal process. Am I right? And then 804 says, since it concerns a misconduct, you can't use 804 either. So is that a legal question that we should tell the district court? Like, by the way, you erred, and by the way, it's futile? Is that what you think we should do? Well, Judge, I would like to solve this legal issue here, if you feel convinced that legally there was no available administrative remedy for Mr. Leach to exhaust, and then also remand back to the district court to do further proceedings for the trial. Well, let me ask you this. Is this analysis, this intersection of 801 and 804 a legal question, a factual question, or a mixed question? Your Honor, I would say it's a mixed question, particularly for Mr. Leach. The legal question is just a pure interpretation of the policy itself, but there are key facts here that the district court should address as well, particularly the fact that the district court did say in its motion, excuse me, its summary judgment order in favor of the defendants, that the grievance officer summarily dismissed Mr. Leach's retaliatory misconduct charge claim. But again, the district court did not comb through the policy itself of 804 to see exactly why was the charge dismissed, or excuse me, the grievance was dismissed, and what would happen if Mr. Leach did bring a grievance claim through 804. So it is primarily a legal question, but there are some key facts here that Mr. Leach should highlight and would like to highlight for the district court. And is that the reason why it was error for the district court not to have given notice, because there are not just legal, but also from your point of view, some factual observations that need to be considered to resolve it? Yes, Your Honor. We believe that Mr. Leach, if given the opportunity, would have been able to present and highlight those key facts for the district court and help the district court marshal through the legal question of 804 and 801 and its interpretation. Can you remind me again specifically, what are those factual questions? One being, again, that the district court briefly talks about Mr. Leach procedurally defaulted on his retaliatory misconduct charge claim because the grievance officer had summarily dismissed the claim. But again, Mr. Leach would not be able to even bring this claim through 804 just based off of the plain text of the policy. So that factual question there is one. Again, other factual questions about maybe possibly Defendant Dyer, what does she mean by her retaliatory statement? The defendants did not do any discovery of any sort to discuss that, and the defendants did not address it. I think what Judge Montgomery-Reeves was talking about was the factual questions on the exhaustion point as opposed to the merits point, I reckon. Correct. Oh, sorry. I apologize. That is purely, I would say, a legal question. But again, some factual questions as well tangential to that. Are we constrained to reviewing the grievance 854220 in this proceeding, or is the grievance 829861, the first one filed, is that included in this proceeding? The first grievance that he had was the grievance that they failed to allow him to pray at his work site. And that really is the grievance that is key here, because that then spurs the retaliatory misconduct charge by Defendant Dyer. The second grievance where he alleges that there was retaliation based off a removal for work assignment, it's not really relevant here, Judge Baum. But can we consider both grievances in this legal proceeding? Sorry, Judge Ross, can you elaborate on this legal proceeding here before us? Yeah, right. Yeah. Yes. It's a part of the record and the factual record. But really, I think the buck stops with the retaliatory misconduct charge that Defendant Dyer does. And then later on, the removal of the work assignment as well could be considered. But it really is the retaliation and also the first grievance, which is really key here. So ultimately, if we agree with you and it goes back and it is redetermined, then the issue of retaliation is going to be the prime issue to be determined? Yes, Judge Ross. Yes. If there are no more questions, if I can conclude, Your Honors, for all these reasons stated in our briefing here today, we ask that the Court reverse the District Court's sua sponte order and remand for further proceedings. Thank you. We'll be back on rebuttal. Thank you. Good morning, Your Honors. Tara Wicke, on behalf of the Department of Correction Office of Chief Counsel's representing appellees, may it please the Court, this case does present three issues, whether or not Mr. Leach was able to show retaliation on the record that was presented to the Court below for summary judgment, the issue of the District Court raising exhaustion sua sponte, as well as whether or not administrative remedies were, in fact, available to Mr. Leach as to that retaliatory misconduct claim. Your Honors, with regards to the retaliation, I would like to address that, begin there, if the Court would allow me. I would submit that Mr. Leach, on the record that was presented, has not shown an adverse action. As you are aware, for a retaliation claim, Mr. Leach would have to show all three elements that there was constitutionally protected conduct, which would be that initial grievance filed in October of 2019. But he would also have to show adverse action and causation. He has not done that on the record below. As far as the informal resolution action, that does not present an adverse action. This is distinct from a misconduct charge. An informal resolution is just that. It's an informal charge. Mr. Leach had to ---- By the way, informal resolution talks about the process after the charge. Is it your representation he did not face a misconduct charge? Correct, Your Honor. The 801 policy for the DOC distinguishes between a formal misconduct charge and an informal resolution action. I see. So if we look at JA-108, the checkmark of ACDM 801 informal resolution as compared to misconduct report has significance. Correct. What is the significance? The significance, again, would be that this is not a full-blown misconduct charge. It is an informal resolution action. It allows for more informal infractions to be dealt with without the need for a hearing. The inmate would go through that informal resolution meeting with their unit manager and be able to, you know, essentially it would be resolved more informally, again, as the name would imply. So there is a, without anything in the record telling us what this is, that something about the consequence of a no-action finding gets memorialized on something called a block-and-work report. What is a block-and-work report? Would this sort of informal resolution be recorded? How would we know this from the record? Sure. Your Honor, the informal resolution being resolved with no action, the record shows that that essentially means that Mr. Leach was found not guilty of that, of that informal resolution action. Does a not-guilty resolution show up on a block-and-work report? So a no-action, essentially, yes, not guilty, would show on these block-and-work reports. No. Does a not guilty through 804 process show up on a block-and-work report? So through a formal misconduct charge, if they are found, if their charges are dismissed, it does not, it's removed from the inmate's file. However, it shows up in their misconduct history, which is part of their file. So it is still visible that they had been charged with that misconduct, but that the ultimate resolution of it was dismissed or not guilty. Whereas for the informal resolution action, it only shows up on that block-and-work report, which, you know, in this case obviously did not deter Mr. Leach from being able to obtain another job. He was able to begin working in maintenance, as he had requested, and clearly did not affect him. Additionally, I mean, that action, not guilty of an informal resolution action, as the Court previously pointed out, I would submit, does not, did not deter him from exercising his First Amendment rights. He went on to file the grievance in February of 2020 regarding that work reassignment issue, so I would submit that that... It says, it doesn't say, quote, not guilty, it says no action. Correct, Your Honor. And will that record be used by persons in the future who might not understand that no action means not guilty? No, Your Honor. The policy, 801 policy states that no action for an informal resolution, again, is only on those block-and-work reports. It is not something that can be considered for parole purposes or for any other purpose as far as any... But still, there's nothing in the record that says, quote, not guilty. Correct, Your Honor. And the people who use those records in the future, will they know that the fact it says no action means not guilty? They should, Your Honor. Again, the policy... They should, but will they? I mean, that's, isn't that what he's concerned about, that maybe they won't? Your Honor, I would submit that they will. Again, the 801 policy details this. Staff is aware of the policy indicating that a no action means not guilty, and ultimately, you know, essentially that is what Mr. Leach was hoping to accomplish with the misconduct, to be found not guilty, so... Well, what are block-and-work reports, and what are the consequences of... Why are you... Why is this being noted on them? Your Honor, I don't believe the record established that. There was no detail as to how that can affect Mr. Leach. He did not present any evidence to that effect. The only evidence in the record with regard to the no action is really just the policy itself, stating that it's present on those block-and-work reports that other employers, other positions and jobs within the prison would be able to see. That's really all that we know from the record at this point. What is a block-and-work report? Your Honor, it would be a report related to the inmate's work. So block is not where he lives? It is, yes, Your Honor, and the work report would be as far as his employment goes. So your view is there's nothing in the record that would tell us the impact of such a notation on either of those reports, and therefore he has not shown adverse action? Is that your argument? Correct, Your Honor. Your Honor, again, this is a situation similar but distinguishable to the Lehman case where misconduct there was dismissed against the inmate and that the court found did not rise to the level of an adverse action. Again, those misconducts, those formal misconducts, actually remain on the inmate's misconduct history and can be viewed by more than just the block-and-work reports. It can be viewed by parole and probation and things of that nature. Here you have something informal issued against the inmate that ultimately resulted in being not guilty. So I would submit that that does not rise to the level of adverse action based on the evidence before the court, the evidence of the record. Mr. Leach did not present any evidence to contradict that in his response to the motion for summary judgment. In the record, there is information in the 801 materials that identify different types of misconduct, and some are less serious than others, and there's a list of things. What about the possibility that he could have faced a consequence? Is that enough? Your Honor, I would submit that it's not because we have to look at what actually happened here. He did not face a serious consequence. He chose to go through the informal resolution process. If he wanted to, he could have entered or not guilty plea to that informal resolution, contested the charge altogether, availed himself of the formal resolution or the formal misconduct process in order to have the charge dismissed altogether. He did not do so. The fact that he went through that informal resolution meeting indicates his acceptance of responsibility and his desire to go through that process. So, again, I would submit that. But does that change the consequence? If an inmate has a choice between formal and informal, opts for informal, does that limit the risk or the potential consequences should there have been a finding of guilt on that? Your Honor, I would analogize this to a DUI situation in the criminal context, where an individual has the opportunity to attempt to avail themselves of ARD or make the choice of fighting the charge altogether, understanding that there's obviously a risk that will go along with that, where they could then be, it might not work out in their favor, right? They could be found guilty of the DUI charge and it would remain on their record. So, yes, the consequences are obviously different if an inmate goes through that informal process versus the misconduct process, but that is a choice that they have to make. Again, we have to focus, I would submit, on the record that's before us and the fact that he chose to go through that informal charge. We should not be looking to what possible consequences may have occurred. The consequences here to Mr. Leach were simply that informal resolution action, which ultimately resulted in the not guilty. And, again, I would submit did not deter him from exercising his rights, as he went on to obviously file additional grievances from there. Oh, go ahead. Go ahead. Just a quick question. I want to make sure I understand exactly what your argument is here. Is it your position that let's say if you have an inmate who has 20 of these no action, not not guilty, but no action is what I understand it says, on their block and work reports, that just doesn't matter at all? Or is it your position, no, I'm not saying that it doesn't matter. What I'm saying is that this particular case doesn't have anything in the record to tell us what the effect is for this inmate. Your Honor, my position is not generally that it does not matter. I'm not taking an approach or a position as to that. I'm focused on this case, these circumstances, the facts before us here. As far as we know, the record before us indicates there was just this one informal resolution action against him, which was ultimately dismissed or where Mr. Leach was ultimately found not guilty. So, no, Your Honor, I'm not taking that general approach at this point. I'm just focused on the facts and circumstances of this case alone and the situation that occurred here. And because of that, my argument is that that did not result in an adverse action, again, because he was not deterred from exercising his rights and he was found not guilty. There were no real consequences to Mr. Leach here as a result of that informal resolution. I wanted to ask you about 801 and 804. Sure. 804 says issues concerning a specific inmate misconduct charge need to be adjudicated through 801. Would you agree that this informal resolution would be something that would concern specific inmate misconduct and hence not reviewable under 804? Your Honor, if Mr. Leach desired to contest the specific misconduct charge, i.e., this was a false charge, I should not have been charged with this, that would, yes, that would go through the 801. The difference here is that the ultimate claim Mr. Leach has filed is one of retaliation, which is absolutely a claim that needs to be grieved through the 804. But it says issues concerning, I'm quoting from your language, issues concerning a specific inmate misconduct charge. Right. Your Honor, again. How do we get around that when the misconduct charge, which he's purporting was retaliatory, is not an issue concerning it and that 804, by its plaintext, isn't a block? So, Your Honor, the issues concerning a specific misconduct charge, again, I'm going to analogize it to the criminal versus civil situation. So the 801 is the DOC's criminal docket, an inmate charged with a misconduct or charged with this informal resolution action. So if they have issues with that charge, again, i.e., this is a false charge, that needs to be addressed through 801. Retaliation, the 804 is the DOC's civil docket. So a retaliation claim is ultimately one that is a civil tort claim. Any remedy for a complaint about retaliation would be monetary relief, which is something that can be obtained through the 804. How do you distinguish the position you're taking here with the position taken on behalf of some of the defendants in Salim versus Brunckhardt? In that case, they took the view that plaintiff's claim that a misconduct charge was falsified was the type not permitted under 804. How do you distinguish Salim from his? Well, again, Your Honor, that's the key right there. The claim in Salim was that the charge was falsified, not ultimately a claim of retaliation. That is the distinction here. You know, I can't speak to what was argued in the Salim case. I can speak to the DOC's policy on these matters, and the DOC at no point has indicated to inmates that a retaliation claim related to misconduct cannot be grieved through the 804. In fact, Mr. Leach even attempted to raise the issue himself in the appeal of one of his grievances. He was not told he could not. It was summarily dismissed at that point solely because it was not raised in an initial grievance. And ultimately, Your Honor, I believe that the court's decision in Salim supports that policy distinction that the DOC does make. The holding there was that the procedural rules of the DOC dictate that inmate misconduct and the resultant proceedings must be addressed through the 801. Any other issues that are not arising from misconduct procedures would need to be through the 804. That's exactly the situation here. But you're distinguishing a retaliation. Filing a misconduct charge in retaliation is not an issue concerning a specific misconduct charge. The person could be saying, you're saying that the charge, a challenge to the charge, whether it's true or false, whether there's evidence in support, is different than claiming the motivation for the charge is prohibited. And therefore, on the latter that I just described, the motivation for the charge is an 804 issue that could have been raised. Correct, Your Honor. So shouldn't, if I'm understanding your argument correctly, then shouldn't the district court have given a chance to the plaintiff to be able to demonstrate at least his view why 804 shouldn't have worked? Your Honor, I would submit that the court raising that issue sui sponte was not error in this case. Mr. Leach was on notice that exhaustion was an issue. In fact, he raised a completely separate exhaustion argument in response to defendant's sole exhaustion argument. But the DOC here didn't make an argument on retaliation exhaustion, did it, before the district court? That's why it's sui sponte. Well, Your Honor, the DOC raised retaliation exhaustion as to retaliation with regard to the work reassignment issue. But as Judge Roth was asking in her questions to your adversary, that's a different matter. Correct, Your Honor. I would agree that that is a separate issue. Essentially, Mr. Leach filed two separate retaliation claims, one regarding the misconduct charge or informal resolution action, and one regarding the work reassignment. So they are separate issues. But, Your Honor, I believe, again, I would submit that this was harmless error at most. But I do think it was proper for the court to raise that issue. The record below was fully developed. There really is no factual dispute as to that claim. It's a purely legal issue. All of the facts Mr. Leach now is relying on to argue the unavailability of any remedies as to that retaliatory misconduct claim were already before the court in the summary judgment record. He's not presented any new facts or arguing that there are any new facts he would present on that issue, simply just that the court did not fully review both policies to determine whether or not there were available remedies. And, Your Honor, I do see my time is up. But I just – Let me ask a quick question. Sure. On the issue of retaliation as it is before us, is there any time span problem? Is this retaliation because of the time proximity of the action accused? Or is there a problem with the time span between that and the time the so-called retaliatory action was taken? Your Honor, I would submit that there is no temporal proximity issue here. The misconduct was issued approximately three weeks, I believe, after that initial grievance. Again, even if the court would disagree with that and find that there is retaliatory animus because of that time frame or based on the statements that Mr. Leach alleges were made by some of the defendants in this case, at the end of the day, again, I would submit that there was no adverse action here, and Mr. Leach would have to show all three elements of retaliation. And he has not done so on the record before the district court. Again, I would just submit that even if the court here finds that that sui sponte raising of exhaustion by the district court was error, I would submit it was a harmless error because, ultimately, Mr. Leach's retaliation claims do fail on the merits. I have one more follow-up question. When you were making a point about the difference between retaliation and false charges, I'm sorry, where do we get from the policy a difference between retaliation and false charges? The broad language of concerning in the policy seems to cover both situations. So if we're looking at the policy, how do we find that distinction? Your Honor, the policy doesn't necessarily make that distinction. It does not specifically state that retaliation needs to be grieved through the 804. It simply states these are the five exceptions to grievances or issues that can be grieved through the 804. At the end of the day, whether or not it's unclear from the policy as to what issues could have been grieved by Mr. Leach under the 804, the circuit has been fairly clear that an inmate can't avoid exhaustion requirements simply by alleging that it's unclear. And ultimately, the U.S. Supreme Court in Ross has also stated that inmates need to err on the side of exhausting. But doesn't the inmate here argue the opposite, not that it's unclear, that it's clear, the language is clear? When you look at the plain language of 801, it says one thing, concerning, and concerning seems to cover this. As I understand your distinction, it's no, this is retaliation versus false, a false claim. And I'm trying to figure out, if I'm looking at the plain language, how do I get that from the plain language? Your Honor, again, I would just submit when issues concerning a misconduct is just that, issues about the charge itself. Retaliation has nothing to do with the charge itself. It is that animus or that motive that the inmate is having an issue with. So that language of issues or concerning a specific misconduct charge, again, really goes to falsity of the charge or things of that nature. All right. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. Just three points. I wanted to first check on the formal hearing and the expungement question that you had. That is specifically stated in 801's policy section 5A7E, but particularly just page 5-2 of the 801 policies. It does say that you can have that charge dismissed and removed from your record. If you invoke the formal process. Right. Once you invoke the informal process, then you're left with whatever. Absolutely. So he was aware that he could invoke the formal, informal, opted for informal, and gave up that, correct? Actually, the prison itself, actually, the prison officials dictate whether a prisoner goes through the informal process or the formal. And because he was charged with the misconduct or failure to report to work, the record there in the policy say that that charge itself must go through the informal resolution process. So he's not even, the doors are not even open for him to pursue a formal hearing process and to have those remedies available to him. Thank you. Just two other points here. This distinguished between false and retaliatory misconduct and whether 804 allows that. Just the plain text of the policies do not support this difference of interpretation here. And I would argue again that Mr. Leach is arguing that there is a falsified and retaliatory misconduct charge. That Defendant Dyer falsified this misconduct charge knowing that he was told not to report to work until his grievance was resolved. Not that he just on his own independently decided that he was not going to report to work today. So that one within itself is false. And two, it is retaliatory. So again, just looking at the plain text of 804, I would like to read it again. It just says, issues concerning a specific misconduct charge. On its face, it's clear. It says anything that is relating to a misconduct charge must go through 801, which is the misconduct and disciplinary policies there. Secondly, I would like to also point out that in Selim, the court, excuse me, the government did seem to take the opposite position that it's now taking. In Selim, it did say that 804 forecloses those grievances that relate to a misconduct charge, grievances that relate to the conduct particularly within a misconduct hearing, or grievances relating to statements written within a misconduct report. And so the government took that position in the Selim case, and now it just cannot be reconciled with the position that it's taking today here. And I would like to also just emphasize as my last point that it is a stain on the record. The record does not show whether all the staff members know that nominally no action taken means not guilty. We just have to take the government's word that that means in the prison that it's not guilty. But again, the record does not show that, and it does not show that on his report as well. How do I reconcile our case Brightwell versus Liam, where we held a dismissed misconduct charge was not an adverse action? Doesn't that operate almost as a legal block to his position on the retaliation claim? Well, Your Honor, that case, it was dismissed, right? But here it's not. It's technically not dismissed. That's what Mr. Leach was actually looking for. So Brightwell had a less – let me let you finish. Go ahead. Give me the distinction again. I'm just arguing again that no action taken is all that we have here on the record. It does not say dismissed. It does not say guilty. It's just saying that based off of the defendants and what they have said in their affidavits through discovery, oh, yeah, no action means not guilty. But we do not know that to mean that it's been dismissed or, again, that it's formally found not guilty. Because the record is silent on the consequence. Yes, Your Honor. Yes, which is why we believe that the district court should explore that more, give Mr. Leach at least the opportunity to explore that more. Am I calling for any further questions, Judge Waller?  Counsel, thank you very much. Thank you, Your Honor. The panel thanks both counsel for excellent arguments and briefing, and the court will take the matter under advisement. And congratulations again on your graduation. Thank you, Your Honor.